**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Weatherproofing Technologies, Inc., | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) No. 13 CV 50378 |
| | ) |
| Alacran/O&S JV, LLC, an Illinois | ) Iain D. Johnston |
| limited liability company, d/b/a | ) Magistrate Judge |
| Alacran/O&S Joint Venture, | ) |
| | ) |
|      Defendant. | ) |

## REPORT AND RECOMMENDATION

Currently, pending before the Court is Weatherproofing Technologies, Inc.'s ("WTI") Motion for Rule 37(b) Sanctions [Dkt. #34, 38, 42, 43] ("Motion") against Alacran/O&S JV, LLC ("Alacran"). The Motion is fully briefed, and the Court has heard multiple arguments on the Motion and the related filings. For the reasons that follow, it is the Court's Report and Recommendation that Alacran be sanctioned in the amount of $34,816.50, which represents a portion of the fees and costs incurred by WTI in obtaining documents and bringing the Motion. It is also the Court's Report and Recommendation that any documents that existed before October 6, 2014, but not produced by October 28, 2014 be barred from being used as evidence. Any objections to the Court's Report and Recommendation must be filed within fourteen (14) days; namely, by February 10, 2015.

## I. FACTS

This case is a breach of contract suit relating to a federal construction project in Rock Island, Illinois. [Dkt. #1] Alacran was formed as a joint venture to provide design and construction services for federal construction projects. [Dkt. #1] WTI alleges it was engaged in roofing and general contracting services in the construction industry. [Dkt. #1] According to WTI, it was not only a subcontractor on the project, but it also entered into an agreement with Alacran to split any profits realized from the project. [Dkt. #1] In broad terms, WTI alleges, and Alacran agrees, that the profits and losses on the project would be split between them. [Dkt. #38 – 1, p. 3] WTI claims that Alacran breached that agreement. [Dkt. #1] Alacran has denied the operative allegations of the Complaint, but filed no affirmative defenses. [Dkt. #6] Although the litigation involves a construction project, the

1

issues in the case are akin to an accounting. The financial expenditures and receipts are critical to resolving the issues raised in the litigation.

WTI filed the suit on November 27, 2013. A case management order, providing for the close of fact discovery on September 1, 2014, was entered on January 29, 2014. [Dkt. #12] Following the retirement of Magistrate Judge P. Michael Mahoney, this matter was transferred to this Court. [Dkt. #14, 16] Since the entry of the case management order, this Court has extended discovery. [Dkt. #29, 33] This Court has also addressed other discovery disputes. [Dkt. #18, 20]

The current discovery dispute relates to WTI's request for production of documents. On May 29, 2014, WTI served production requests, seeking, among other things, documents showing what disbursements Alacran had made relating to the project and what money it had received. [Dkt. #38, p. 10 – 12] Because the alleged agreement provided for splitting profits, documents showing income and expenses would be relevant to the claims. Alacran's responses were due on July 1, 2014.

On July 7, 2014, WTI filed its first motion to compel relating to these discovery requests. [Dkt. #18] The Court granted that motion in part, and the Court ordered all parties to respond to all outstanding discovery by August 4, 2014. [Dkt. #20] The Court also struck other deadlines established by the case management order. [Dkt. #20]

On August 4, 2014, Alacran provided its responses to WTI's production requests. The main response to the production request stated, "Defendant will produce all non-privileged responsive documents in its possession custody or control as required by the Federal Rules of Civil Procedure. Defendant has previously produced copies of documents numbered R1-1605 to Plaintiff. In addition, Defendant will permit inspection, at the offices of Alacran Contracting, LLC, at a time to be agreed, and copying of 30 boxes of documents in boxes marked as described below, drawings if [sic] and binders marked as described below." [Dkt. #40-1, p. 2] The response then identified the number of boxes that contained various categories of documents. *Id.*

On August 6, 2014, the Court granted Alacran's motion for an extension of time to serve its answers to interrogatories. [Dkt. #29] As a result of this extension, WTI sought an extension to depose Dai Bui, Alacran's principal. On August 18, 2014, the Court granted that motion. [Dkt. #33]

According to Alacran, on August 28, 2014, WTI reviewed the 30 boxes of documents referenced in Alacran's response to the document requests.

On September 19, 2014, Alacran notified WTI that it had two (2) boxes of additional documents that were responsive. [Dkt. #40-3] According to the parties, these boxes contained financial documents.

On September 22, 2014, WTI stated that they needed the documents immediately and asked that the documents be copied and sent to it. [Dkt. #40-4]

On September 22, 2014, WTI filed "Plaintiff's Motion to Compel Defendant to Produce Documents, For Rule 37(b) Sanctions, and to Strike the Deadline to Depose Dai Bui" (the "Motion"), which is the subject of this Report and Recommendation.

[Dkt. #34]  The Motion sought production of emails and correspondence (including correspondence with the Army Corps of Engineers (ACOE)), schedule documents, copies of checks or electronic verifications of payments made on the project, and project cost spreadsheets, among other documents. [Dkt. #34, p. 4 – 5]  According to WTI, Alacran "failed to produce copies of checks and electronic verification of payments made or received" and that WTI was "entitled to receive a copy of every check or electronic payment made to each subcontractor . . . for every payment made, and proof of payment for every payment received from the ACOE."  [Dkt. #34, p. 7]  WTI also demanded that Alacran produce "all job cost spreadsheets" because as it noted, "The financial documents are the most critical documents in this lawsuit, because the main issue in the case is the total amount of [Alacran's] construction costs incurred." [Dkt. #34, p. 8]  As sanctions for Alacran's failure to produce documents, WTI moved this Court to award attorneys' fees and costs, enter an order barring the use of all responsive documents not produced in five (5) days, and extending the date for Mr. Bui's deposition.  [Dkt. #34, p. 9 – 10]

On September 25, 2014, at the presentment of the Motion, Alacran initially argued that the Motion "did not need to be brought."  But later in the hearing, Alacran conceded that it still possessed responsive documents that had not been produced; a concession at odds with the assertion that the Motion was unnecessary.

Following the hearing on the Motion, the Court ordered Alacran to provide outstanding documents to WTI by October 6, 2014, extended the date for the completion of Mr. Bui's deposition and entered and continued the Motion. [Dkt. #36]  The Court also set the case for a status hearing on October 14, 2014, so that the parties could advise the Court as to the status of the production.

At the October 14, 2014 status, Alacran reported that it had located responsive spreadsheets and emails that would be produced that day. [Dkt. #40, p. 2] However, WTI informed the Court that it did not believe that Alacran's discovery responses were complete.  Consequently, the Court allowed WTI to file a supplement to the Motion. [Dkt. #37]

On October 24, 2014, WTI filed the supplement to the Motion. [Dkt. #38]  According to the supplement, Alacran's discovery responses claimed that Alacran's costs on the project exceeded $21 million.  However, WTI asserted that the documentation supporting this assertion amounted to far less than $21 million. WTI claimed that Alacran had failed to produce documentation (referred to as "backup documents," such as checks, invoices, and electronic transfers) that support over $5 million in costs for subcontractors and payroll on the project.  WTI argued that, without the backup documents, it was unable to challenge the veracity of the claimed losses. WTI also argued that the importance of backup documents was amplified because documents Alacran produced to support its claim of certain losses conflicted.  In all, WTI claimed that over $5 million was unsupported by backup documentation. [Dkt. #38, p. 4 – 5]  As a result of Alacran's failure to produce the backup documentation, WTI's supplement sought the additional sanction of "barring . . . any evidence in support of the undocumented costs on the Project." [Dkt. #38, p. 5, 6]

On October 28, 2014, the Court held another status hearing regarding the Motion and the supplement. Alacran made another production of responsive documents that same day. [Dkt. #42, p. 3] These documents related to two other lawsuits filed against Alacran, both filed in the Central District of Illinois: *U.S. ex. rel. Ryan & Associates v. Alacran/O&S JV, LLC* and *Tri-City Electric Co. v. Alacran/O&S JV, LLC.* Alacran also requested time to file a document in response to the supplement, which the Court allowed. [Dkt. #39] The Court also set the matter for hearing on November 13, 2014, and again struck the date by which Mr. Bui was to be deposed. [Dkt. #39]

On November 4, 2014, Alacran filed its response to the Motion and supplement. [Dkt. #40] Alacran's response detailed its efforts to produce responsive documents to WTI. Alacran also asserted that some of the documents it produced could not have been produced before the due date because they did not yet exist; namely, Alacran produced documents relating to settlements with other subcontractors, which Alacran appears to assert establish costs on the project. [Dkt. #40, p. 3] Alacran further argued that it did not produce some documents based on a misunderstanding of the discovery requests. [Dkt. #40, p. 4] Alacran additionally argued that WTI had not been prejudiced. (The response is not entirely clear on this point. The response does not seem to differentiate between harm caused by late production of documents that resulted in the motion and the harm caused by the lack of production of documents.) Alacran further argued that "[n]o discovery cutoff has been established, and not [sic] trial date has been set." [Dkt. #40, p. 4] In a nutshell, Alacran's response was that it gave WTI what it had and no sanctions were warranted.

According to WTI, Alacran made an additional production of documents on November 4, 2014. [Dkt. #42, p. 3] According to WTI, this production was limited to a copy of a settlement agreement in the *Tri-City* case. [Dkt. #42, p. 5]

On November 13, 2014, the Court held another status on the Motion. At this status, it became clear that the *Ryan* and *Tri-City* documents – documents that Alacran asserts establish a loss of over $4 million – should have been produced earlier, but were not. [November 13, 2014 Hearing, Recording at 2:18 – 2:19]

On December 8, 2014, WTI filed "Plaintiff's Second Supplemental Brief in Support of Its Motion for Rule 37(b) Sanctions Against Defendant." [Dkt. #42]

On December 18, 2014, the Court held a status, at which time it ordered WTI to produce its redacted billing records for an *in camera* inspection. [Dkt. #45]

On January 6, 2015, WTI provided the billing records to the Court for the *in camera* inspection.

On January 20, 2015, the Court held a status and ordered that additional billing records of WTI's counsel be provided to the Court.

On January 21, 2015, WTI provided additional billing records for *in camera* inspection.

4

## II. ISSUE

The issue before the Court is twofold: first, should sanctions be imposed; and second, if so, what those sanctions should be.

## III. APPLICABLE LEGAL PRINCIPLES

The legal issues presented are not complicated, and they are governed by clear and established rules of procedure.

The touchstone of most federal court decisions is the often-neglected Federal Rule of Civil Procedure 1. Rule 1 provides the following: "These rules govern the procedure of all civil actions and proceedings in the United States district courts . . . They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Rule 26(b)(1) provides for the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).[1]

WTI sought documents pursuant to Rule 34, which allows a party to request any other party to produce designated documents. Fed. R. Civ. P. 34(a)(1). A party served with a request to produce documents must respond to the request within thirty (30) days. Fed. R. Civ. P. 34(b)(2)(A). The producing party must produce the documents in one of two ways: either (a) as the documents are kept in the ordinary course of business or (b) organized and labeled to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E).

Rule 37 provides the procedure for compelling discovery responses, and the consequences for failing to provide responsive documents. Fed. R. Civ. P. 37(a)(3)(B); Fed. R. Civ. P. 37(a)(5)(A). A party seeking discovery may move for a court order compelling the production of documents. Fed. R. Civ. P. 37(a)(3)(B). And if that motion is granted or if the documents are produced after the motion is filed, then the court must require the responding party or its attorney to pay reasonable expenses (including attorneys' fees) incurred in making the motion, unless (a) the nondisclosure was substantially justified or (b) an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii),(iii). When a party fails to comply with an order granting a motion to compel, the court may impose further sanctions, including, but not limited to, the sanctions enumerated in Rule 37(b)(2)(A)(i) – (vii). Fed. R. Civ. P. 37(b)(2)(A)(i) – (vii). Moreover, when a party fails to comply with an

---

[1] There is no dispute that the documents sought by WTI are relevant. Indeed, the documents go to the heart of not only WTI's claim, but also Alacran's defense. Likewise, there is no genuine dispute that the production of the documents sought imposed a burden or expense that outweighed the likely benefit of production under Rule 26(b)(2)(C)(iii).

order compelling the production of documents, the court may also impose attorneys' fees, in addition to or in lieu of the other sanctions. Fed. R. Civ. P. 37(b)(2)(C).

In resolving discovery disputes, including motions to compel and for sanctions, the trial court must exercise its extraordinary discretion. *Cleversafe, Inc. v. Amplidata, Inc.*, 2014 U.S. Dist. LEXIS 79278, *6 (N.D. Ill. 2014). In exercising that discretion, the court must adhere to the doctrine of proportionality, and sound legal principles. *Id.* at *5; *New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460, 463 (N.D. Ill. 2007). Absent a compelling reason, cases should be decided on the merits. *Cleversafe.* 2014 U.S. Dist. LEXIS 79278 at *9.

## IV. CONTENTIONS

WTI contends that it is entitled to three types of sanctions: (1) that Alacran be barred from using documents produced after October 6, 2014 or, at the latest, October 14, 2014 (which would preclude the use of the *Ryan* and *Tri-City* documents); (2) that Alacran pay WTI's attorneys' fees as well as the fees for its consultant and support staff; and (3) that Alacran be barred from presenting any evidence (including testimony) as to any of Alacran's alleged project costs that are not supported by backup documents. In contrast, and not surprisingly, Alacran asserts that no sanctions should be imposed, and that if sanctions were warranted, the sanction should be modest.

## V. DECISION

There can be no real dispute that Alacran produced documents it contends are responsive and relevant long after they were due, and after multiple efforts by WTI to obtain responsive documents, including filing the Motion on September 22, 2014, and after this Court's September 25, 2014 order, requiring the production of responsive documents. Accordingly, these actions (perhaps "inactions" may be a better word) violated Rule 34 and a court order. Consequently, the Court is authorized to impose sanctions unless it finds that the nondisclosure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii),(iii); Fed. R. Civ. P. 37(b)(2)(A), (C).

### A.   ALACRAN'S FAILURE WAS NOT SUBSTANTIALLY JUSTIFIED.

The Court does not find that Alacran's failure to produce responsive documents was substantially justified. Alacran does not offer much in the way of substantial justification. Although not labeled as such, Alacran's closest argument in this regard is that it did not understand WTI's document requests. The Court rejects that argument for two reasons. First, the document requests were not vague or confusing, particularly in light of the claims in this case. [Dkt. #40-1] Indeed, except for one production request, Alacran did not object to any of the requests

6

based on an assertion that the request was vague or ambiguous. [Dkt. #40-1] The type of documents WTI sought was clear. Second, the argument is belied by Alacran's later concession that it should have produced the *Ryan* and *Tri-City* documents. Alacran has failed to meet its burden that the untimely disclosure of the documents as well as the failure to timely comply with the Court's order was substantially justified. Fed. R. Civ. P. 34 1970 Advisory Committee Notes ("The provision places the burden on the disobedient party to avoid expenses by showing that his failure was justified or that special circumstances make an award of expenses unjust."); *System Development Integration LLC v. Computer Sciences Corp.*, 2012 U.S. Dist. LEXIS 100719, *7-8 (N.D. Ill. 2012) (burden on non-producing party under Rule 37(c)); *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008) (burden on non-producing party under Rule 37(c)).[2]

## B.    IMPOSING SANCTIONS IS NOT UNJUST.

Likewise, the Court does not believe that imposing sanctions under these circumstances would be unjust. Again, although not labeled as arguments regarding this aspect of Rule 37, Alacran seems to assert that imposing sanctions would be unjust because it acted in good faith, and, according to Alacran, "[n]o discovery cutoff has been established, and not [sic] trial date has been set." [Dkt. #40, p. 4]. With regard to Alacran's assertion of good faith, the assertion fails to recognize that WTI was required to file multiple documents and make multiple arguments to obtain requested documents that are basic to the claims in this case. With regard to Alacran's assertion that no discovery cut-off date was established, that assertion is simply incorrect. A fact discovery cut-off date of September 1, 2014, was established by the case management order [Dkt. #12], but the Court was required to strike that date because of Alacran's failure to provide the requested documents. [Dkt. #33] Moreover, Alacran did not produce many of the key documents, including the documents relating to *Ryan* and *Tri-City* until after September 1, 2014. With regard to Alacran's assertion that no trial date has been set, that assertion is correct. But the assertion does not help its cause. First, the lack of a trial date is not a basis to fail to respond to discovery requests and to comply with Court orders. *Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) ("It is no answer to say the trial date has not been set."). Second, it is common knowledge, a matter of local rule and established practice that in the Western Division of the Northern District of Illinois the

---

[2] The Court recognizes that at least one document – the settlement agreement involving *Tri-City* – did not exist until after the Court-ordered production date. Obviously, that document could not have been produced earlier. But that is only one document, and to the extent that other documents existed at that time but were not turned over, that non-production is not substantially justified. Moreover, based on the filings and arguments by WTI, the key documents that should have been timely produced – both when requested to be produced and when ordered to be produced – were the financial documents (backup documents).

magistrate judge handles all pretrial matters and that upon completion of discovery and the final pretrial conference, the case is transferred to the district judge who sets a trial date. Thus, the trial date is contingent upon meeting the discovery dates established by the magistrate judge. Meeting discovery dates is a necessary precondition to setting a trial date. Accordingly, trial dates cannot be set when parties fail to comply with discovery dates and orders, which occurred in these circumstances.

## C.    IMPOSING ATTORNEYS' FEES AND BARRING THE USE OF DOCUMENTS ARE APPROPRIATE SANCTIONS.

For the reasons explained below, the Court believes that a monetary sanction, including attorneys' fees, is appropriate. Additionally, the Court believes that barring Alacran from using documents that existed before October 6, 2014, but not produced by October 28, 2014 is appropriate.[3] The Court will not impose WTI's requested sanction that Alacran be barred from presenting evidence as to project costs that are not supported by backup documents.

Because of the amount of discretion afforded trial courts to impose reasonable sanctions for discovery violations, it is unsurprising that Alacran and WTI were able to cite cases that supported, at least to some degree, their respective positions; however, those cases are fact-intensive and none are outcome determinative. *New Medium Techn.*, 242 F.R.D. at 463. Consequently, the sanctions recommended are unique to the factual circumstances presented.

### 1.    Attorneys' Fees and Expenses Should Be Imposed.

Because the Court has already found that the failure to timely produce responsive documents, despite being ordered to do so, was not substantially justified and imposing fees would not be unjust, the Court is mandated to impose an award of attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). The Court additionally believes the award of fees is an appropriate use of its discretion. Fed. R. Civ. P. 37(b)(2)(A),(C). Alacran failed to timely produce responsive documents, even after the Court ordered it to do so. The costs incurred by WTI to eventually obtain those documents should not be borne by WTI, particularly after a court order requiring production. Alacran's inactions necessitated the Motion and resulting filings and hearings.

---

[3] At one of the hearings, the Court raised the possibility of imposing an adverse inference instruction as a sanction. However, upon reflection and independent research, the Court does not believe that an adverse inference instruction would be appropriate. No jury demand was made in this case, and the case will likely be heard by District Judge Kapala. As a result, the recommendation of an adverse inference by a magistrate judge to a district judge in a bench trial is not appropriate. *See Jorgensen v. United Communications Group*, 2013 U.S. Dist. LEXIS 56201, *20 (D. Md. 2013); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 342-43 (D. Conn. 2009).

The Court must determine the reasonableness of the fee petition, both in terms of the extent of the work performed and the hourly rate. *Whitehead v. Gateway Chevrolet*, 2004 U.S. Dist. LEXIS 8367, *3 (N.D. Ill. 2004); *see also Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013). The Court has carefully reviewed the fee petition and supporting documents, including the affidavit of WTI's lead counsel, Michael Hanahan. [Dkt. #43]  The billing records are detailed and explain with particularity the work performed by WTI's counsel.  On occasion, the billing records also indicate that WTI was not charged for certain work.  Moreover, a review of the billing records establishes that WTI's counsel is not seeking to receive fees for duplicate work.  For example, although both Attorney Hanahan and Attorney Rieck attended and participated in the December 18, 2014, telephonic status hearing, WTI is not seeking to obtain fees for both attorneys.  With regard to attorneys' fees, the only error – albeit extremely slight – the Court identified was that on November 13, 2014, Attorney Rieck billed at total of .8 hours to WTI on that day, but only .4 hours was attributable to this case.  Accordingly, the Court deducts .4 hours.

WTI's counsel has submitted an affidavit supporting the fee petition, including their hourly rate. [Dkt. #43]  WTI's counsel (Attorney Hanahan) certifies that his standard hourly rate for WTI is $435 per hour and that his associate's standard hourly rate for WTI is $375 per hour.  Counsel also certifies that these rates are reasonable for the type of work done in this case and in matters of this type. [Dkt. #43, p. 6]  In fact, Attorney Hanahan's rate is purportedly discounted by 30% off his standard hourly rate. [Dkt. #43, p. 6]  Based upon the affidavit and the undersigned's own experience both before[4] and after taking the bench, the rates charged are reasonable.[5]  Attorney Hanahan is a very experienced construction litigator and his hourly rate of $435 charged to WTI is not only reasonable, it is a bargain.  Attorney Rieck's rate is also reasonable.

Multiplying the hours worked by their respective hourly rates for Attorney Hanahan and Attorney Rieck results in a total of $34,816.50.  This amount reflects the deduction of $150 for the .4 hours identified above.

WTI also seeks expenses relating to work performed by an in-house paralegal (Carlos Ramos) at WTI's counsel's office as well as an outside consultant (Deborah Fiedler) hired by WTI's counsel to review and analyze the documents.  The expenses sought for these individual's work totals $12,202.  The Court recommends that the expenses sought for the work performed by these individuals not be awarded as a sanction.  Upon a review of the billing records, the time expended by Mr. Ramos appears to be work ordinarily performed in litigation, such as uploading documents produced into a document management system.  The Court believes that this work

---

[4] In 2008, the undersigned's hourly rate for private clients (including construction companies and real estate developers) at Holland & Knight LLC was $350 per hour.

[5] Alacran has not challenged the reasonableness of fee petition, including the rates.  The Court appreciates Alacran's decision not to engage in an unnecessary battle as to reasonable billing rates.  Indeed, Alacran's experienced counsel could likewise command a comparable billing rate.

would have been required regardless of when the documents would have been produced. Ms. Fiedler was retained by WTI's counsel to analyze the documents Alacran produced and correlate the corresponding documents to purported project costs. Although WTI argues that Ms. Fiedler's work was made more difficult, resulting in additional time and expense, because of Alacran's production and non-production, there is no evidence to that effect. Additionally, based upon an analysis of Ms. Fiedler's billing records, the Court believes that much, if not all, of the work would have occurred regardless of Alacran's failures to timely comply with the discovery request and Court order. Certainly, WTI would not take Alacran at its word as to its expenses; WTI would have conducted its own analysis to confirm or disprove Alacran's assertions. by not recommending the recovery of these expenses, the Court is not implying that Mr. Ramos' work or Ms. Fiedler's work was unimportant or unnecessary. Instead, the Court is merely stating that the work expended (and resulting billings) is not compensable as a sanction in this case.[6]

### 2.     Barring The Use of Certain Documents is Appropriate.

WTI also seeks to bar the use of documents produced after October 6, 2014, or at the latest, October 14, 2014. [Dkt. #42, p. 7] Unsurprisingly, Alacran opposes this sanction.

The dates requested by WTI are important. Alacran did not produce key documents allegedly supporting its purported project costs until after October 14, 2014. By WTI's calculations, Alacran had failed to produce backup documentation for over $5 million in project costs by October 6, 2014. Granted, WTI's request is certainly not unfounded. Indeed, the Court ordered that Alacran provide the requested documents by October 6, 2014. [Dkt. #36] Accordingly, the Court shares WTI's frustration. But the imposition of a $5 million sanction is disproportionate to Alacran's failures. The Court believes that the imposition of $34,816.50 in attorneys' fees is an adequate sanction. WTI now has the documents, albeit after having been forced to file the Motion to obtain the documents. The sanction of attorneys' fees reimburses them for that unnecessary effort.

But WTI's argument that production must end at some point is correct. Alacran cannot produce documents in a slow trickle long after they are required to be produced. The Court does not know what other relevant and responsive documents exist and existed when the production request was made and the Court ordered their production. Alacran has told the Court there are no others. To prevent any further production of relevant responsive documents that should have been previously produced, the Court recommends that any document that existed as of October 6, 2014, but not produced by October 28, 2014, be barred from being used.

---

[6] The Court also declines to impose the costs to express mail documents to the Court.

3.         Precluding Evidence Relating to Claimed Expenses or Costs That Are Not Supported by Backup Documents is Not Appropriate.

As an additional sanction, WTI asks this Court to bar Alacran from presenting any evidence to support any of its assertions of costs if no backup documentation exists. The Court declines this request.[7] Imposing the requested sanction would essentially grant WTI a $5 million sanction, which is inconsistent with deciding cases on their merits. Moreover, the sanction conflates the various stages and processes of litigation. Litigants often testify as to certain facts that one would reasonably expect to be supported by documentation, but fail to provide "backup" for their testimony. For example, physicians assert that they ordered certain procedures or medications, but the medical records contain no indication to support the assertion. Likewise, police officers claim that arrestees were already injured before the alleged excessive force occurred, but the incident reports are silent as to the alleged injury. Testimony of this type is subject to cross examination before the trier of fact (here, in all likelihood, District Judge Kapala). The trier of fact then weighs that testimony to determine whether the testimony is credible. The testimony may not be credible, but is still admissible. WTI's proposed sanction would bar that testimony and deprive the trier of fact from making fundamental factual determination in this case. At this stage, based upon the facts currently before the Court, it will not recommend such a drastic sanction.

*     *     *

It is the Court's Report and Recommendation that Alacran be sanctioned in the amount of $34,816.50 for its discovery violations. It is also the Court's Report and Recommendation that Alacran be barred from using any documents that existed as of October 6, 2014 but not produced by October 28, 2014 as evidence in this case. Any objections to this Report and Recommendation must be filed within fourteen (14) days; namely, February 10, 2015.

Entered:      January 26, 2015

                                 Iain D. Johnston
                                 U.S. Magistrate Judge

---

[7] Currently, there is no evidence of spoliation by Alacran. Consequently, the harsher sanctions identified in Rule 37, including "designating facts be taken as established" or "prohibiting the disobedient party from supporting . . . designated . . . defenses", are not appropriate under the facts presently before the Court. Fed. R. Civ. P. 37(b)(2)(A)(i), (ii).